Tagged Opinion



**ORDERED in the Southern District of Florida on January 24, 2007.**

_____
Robert A. Mark, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re | Case No.    03-40415-BKC-RAM |
| | through       03-40420-BKC-RAM |
| FAR & WIDE CORPORATION, et al., | (Substantively Consolidated) |
| Debtor. | Chapter 11 |
| BARRY E. MUKAMAL, LIQUIDATING TRUSTEE, | |
| Plaintiff, | |
| vs. | Adv. No. 05-1332-BKC-RAM-A |
| LIBRA SECURITIES, LLC, | |
| Defendant. | |

**ORDER RESERVING RULING ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, DENYING MOTION
TO STRIKE AFFIRMATIVE DEFENSES AND SETTING FURTHER HEARING**

Barry E. Mukamal (the "Trustee") as the Liquidating Trustee of Far & Wide

Corporation, Far & Wide Travel Corporation, African Travel, Inc., Adventure Centers, Inc.,

Travel Media Services, Inc., and Far & Wide International, Inc. (the "Debtors") sued Libra Securities LLC ("Libra"), an investment banking firm, under §547 and §550 of the Bankruptcy Code to avoid and recover a $25,000 prepetition transfer. Libra answered the Trustee's Complaint and asserted, among other defenses, the "new value" defense under §547(c)(4). Libra moved for summary judgment on the new value defense, and the Trustee moved to strike Libra's affirmative defenses.

For the reasons more fully explained below, the Court is reserving ruling on the Motion for Summary Judgment and denying the Motion to Strike.

### Procedural History

On September 11, 2006, the Court conducted a hearing on Libra's Motion for Summary Judgment (C.P. # 17) and the Trustee's Cross-Motion to Strike Affirmative Defenses (C.P. # 29). At the hearing, the Court heard argument and considered the parties' motions and additional papers filed by Libra, including the Declaration of Robert G. Morrish (C.P. # 18), the Supplemental Declaration of Robert G. Morrish (C.P. # 33) (collectively, the "Morrish Declarations"), and the Reply to the Trustee's Cross-Motion (C.P. # 32). Following the hearing, on September 13, 2006, the Court entered an Order (I) Reserving Ruling on Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion to Strike Affirmative Defense (II) Directing Parties to Submit Supplemental Responses and (III) Re-Setting Pre-Trial Conference (C.P. # 37). The Court reserved ruling on both Libra's Motion for Summary Judgment and the Trustee's Cross-Motion to Strike Affirmative Defenses, and the Court directed the parties to submit supplemental briefs. Subsequently, the Trustee submitted his Trustee's Supplemental Response (1) in Opposition to Defendant's Motion for Summary Judgment and (2) in Support of Trustee's Cross-Motion to Strike Affirmative

Defense (C.P. # 41), and Libra filed its Supplemental Memorandum in Support (C.P. # 43) and a Declaration of Frank Sena (C.P. # 44) (the "Sena Declaration").

## Factual Background

The facts are largely undisputed. Based upon statements contained in the Morrish Declarations and the Sena Declaration, which were unrefuted by Plaintiffs, the Court finds as follows:

On June 16, 2003, Libra and the Debtors entered into an agreement in which Libra was retained as a co-financial advisor. Libra was primarily engaged to either sell or substantially recapitalize the Debtors. In return, the Debtors agreed to pay Libra a $50,000 engagement fee upon execution of the agreement (the "Engagement Fee"). The Debtors also agreed to pay Libra and its co-financial advisor, CIBC World Markets Corp., which is not a party to this suit, a transaction fee equal to 2.0% of the value of any sale or recapitalization (the "Transaction Fee").

The Debtors did not pay the Engagement Fee upon execution of the agreement on June 16th. Libra nevertheless immediately commenced its advisory services. These services included creating and updating offering materials, reviewing and preparing due diligence materials, working with the Debtors, and contacting and cultivating prospective purchasers. Approximately seven weeks after Libra began rendering these services, on August 8, 2003, the Debtors paid Libra $25,000 on account of the Engagement Fee (the "$25,000 Payment"). Libra continued rendering advisory services to the Debtor after receiving the $25,000 Payment (the Post-Payment Services). Libra spent approximately 130 hours rendering the Post-Payment Services, and Libra contends that the value of these services exceeds $50,000. The balance of the Engagement Fee was never paid. On September 24, 2003, less than 90

days after making the $25,000 Payment, the Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code.

The one important factual issue which remains is what portion of Libra's total services were performed <u>after</u> receiving the $25,000 Payment. The significance of this issue will be explained below.

## Discussion

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. "The mere existence of a scintilla of evidence in support of the [opposing party's] position will not be sufficient to forestall summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). Thus, once the moving party has established his burden of proof, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion. <u>Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Even assuming the $25,000 Payment was a preference payment under §547(b), Libra contends that it is entitled to summary judgment on its affirmative defense under §547(c)(4). Section 547(c)(4) provides:

> The trustee may not avoid under this section a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for he benefit of the debtor—
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

"New value" may take the form of services. §547(a)(2) (defining "new value" to include "money's worth in services"). The date on which such new value is given is deemed to be the date on which the services are rendered. Excel Enters., Inc. v. Sikes, Gardes & Co., (In re Excel Enters., Inc.), 83 B.R. 427, 431 (Bankr. W.D. La. 1988); 5 Collier on Bankruptcy ¶ 547.04[4][c] (15th Ed. Rev. 2006). The creditor must prove the specific valuation of the new value. Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.), 861 F.2d 1555, 1559 (11th Cir. 1988) (holding that "money's worth" in the definition of "new value" requires that a creditor prove, as a part of a §547(c)(1) affirmative defense, specific valuation of the money's worth in goods, service, or new credit).

In the case at bar, the undisputed facts establish that the purported new value was extended subsequent to the alleged preference, the alleged new value was unsecured, and Libra did not receive an otherwise unavoidable transfer on account of the purported new value. Libra's affidavits demonstrate that the Post-Payment Services were actually rendered and were so rendered subsequent to the $25,000 Payment. Moreover, the Post-Payment Services were unsecured as they were rendered solely on the faith of the contract between itself and the Debtors, and Libra neither received nor benefitted from any further transfer on account of the Post-Payment Services. The issue, then, is whether the Post-Payment Services constitute "new value" and, if so, how the amount of that value is to be determined.

Courts generally require that purported new value provide the debtor with a material benefit. Charisma Investment Co., N.V. v. Airport Systems, Inc. (In re Jet Florida System, Inc.), 841 F.2d 1082, 1084 (11th Cir. 1988) (per curiam) ("Jet Florida"). E.g., Phoenix Restaurant Group, Inc. v. Fuller, Fuller & Associates (In re Phoenix Restaurant Group, Inc.), 316 B.R. 671, 679 (Bankr. M.D. Tenn. 2004) (Lundin, J.) (new value requires "tangible economic benefit"). This material benefit insulates a preferential transfer to a particular

creditor to the extent that it replenishes the estate. Jet Florida, 841 F.2d at 1084. See also Official Comm. of Unsecured Creditors of Maxwell Newspapers, Inc. v. Travelers Indemnity Co. (In re Maxwell Newspapers, Inc.), 192 B.R. 633, 638 (Bankr. S.D.N.Y. 1996) (demonstrating that the focus on replenishing the estate is consistent with and required by the policies underlying preference law). Thus, the Post-Payment Services constitute new value only if they were a material benefit and only to the extent that they replenished the estate.

In Jet Florida, the alleged new value was the forbearance by a landlord of the debtor to terminate its lease following the debtor's prepetition default. The court held that such forbearance did not constitute new value because the debtor had abandoned the property prior to the beginning of the preference period. The court reasoned that absent use of the premises by the debtor, neither the lease nor the landlord's forbearance could replenish the estate and that they actually had the effect of depleting the estate. However, the court stated in dicta that had the debtor actually stayed on the leased property or sublet the property, then, such forbearance may have constituted new value.

Relying on Jet Florida, the Trustee argues that as a matter of law the Post-Payment Services were not a material benefit and did not at all replenish the estate because those services were accepted under a contingency contract and the stated contingency did not occur. Since neither a sale nor a recapitalization of the Debtors occurred, the Trustee contends that no benefit inured to the estate from the Post-Payment Services. Moreover, the Trustee argues that the Post-Payment Services standing alone did not confer a material benefit or replenish the estate because such services when taken under a contingency contract cannot yield benefit independent from the occurrence of the contingency.

The Trustee's reliance on Jet Florida is misplaced since the operative facts are not analogous. In Jet Florida, the debtor made no use of the leased property throughout the

6

preference period.  The court reasoned that no benefit could be conferred upon the estate since the debtor did not accept or use the purported new value.  The Debtors in this case, however, continued to accept Libra's services.  If any part of Jet Florida is relevant, it is the dicta stating that had the debtor in that case stayed on and used the leased property, the landlord's forbearance may have constituted new value.

The second difficulty with the Trustee's argument is that it does not reflect the true nature of the agreement between the Debtors and Libra.  The contract was not a simple contingency agreement.  Although, it did call for a contingency payment, the contract also called for an initial $50,000 payment that Libra would retain even if the contingency did not occur.  The significance of this type of mixed fee agreement in analyzing preference defenses is discussed in Gray v. Oppenheimer & Co. (In re Molten Metal Tech., Inc.), 262 B.R. 172 (Bankr. D. Mass. 2001).

In Molten Metal, the court considered a contract for advisory services essentially identical to the one in the case at bar.  The soon to be debtor contracted with an investment bank to arrange a private placement in exchange for two separate fixed-amount payments and for payment of a contingency fee on the occurrence of the private placement.  The first fixed-amount payment was timely made and not at issue.  The second fixed-amount payment was not timely made, but, unlike this case, in Molten Metal the contingency, the private placement, did occur.  Two days after the sale, the bank was paid both the second fixed-amount payment and the contingency fee.  In a subsequent bankruptcy case, the Chapter 11 Trustee sued to recover these amounts as preferential transfers.

The bank interposed the contemporaneous exchange for new value defense under §547(c)(1).  For the purposes of determining both the contemporaneous element and the new value element, the court separately analyzed the services and the contingency (the private

7

placement). With respect to new value, the court held that the contract terms determined the extent to which value was conferred. Thus, the value conferred by the services equaled the sum of the two fixed-amount payments, and the value conferred by the private placement equaled the contingency fee. The transfer of the contingency fee was held by the court to be contemporaneous with the new value stemming from the private placement. The transfer of the second fixed-amount payment, however, was held not to be contemporaneous because it had been due and owing for months.

The court acknowledged that the parties' contract characterized the contingency fee not as a commission but as consideration for the bank's services. Nevertheless, the court reasoned:

> But service and success are not mutually exclusive: success in this context is the service of producing entities who actually do invest in the Debtor. In view of the structure of the agreement, this must be what the Debtor and [the Bank] intended. Under the Agreement, the amount of the final payment is a function of the amount of the investment obtained; the payment itself is entirely contingent on success in obtaining the investment; and the payment becomes due only upon the closing of the stock sale. Therefore, by design and function, the final payment is a payment for success. By the same reasoning, payments that were not contingent on success are, by design and function, properly ascribed to [the Bank's] efforts, not to its success; the Debtor was obligated to pay for these efforts regardless of whether they proved successful.

Molten Metal, 262 B.R. at 177 (footnotes omitted).

Thus, if the contract was a pure contingency agreement, then under the Molten Metal approach, the services and the success (or lack thereof) would merge. Services accepted under a pure contingency agreement would replenish the estate only to the extent that the contingency actually occurred and only to the extent of the contract price. However, if the contract is a mixed arrangement, as in the case at bar, then the (soon to be) debtor has

8

determined that the services themselves have independent value to the estate and that value is deemed to be the fixed part of the contract price.

This Court agrees with Molten Metal's analysis. As applied here, this means that the value of all the services Libra rendered under its contract is $50,000. Libra's burden, however, is to establish the value of the Post-Payment Services since services rendered by Libra before the $25,000 Payment fail to meet the "after" requirement of §547(c)(4). This is where Libra's proof falls short. Libra has established that its Post-Payment Services, measured by hours of work at a proffered hourly rate, had a value well in excess of $25,000. The problem is that this is not the proper measure of value. The contract controls, and the contract does not provide for hourly rates. Rather, Libra is entitled to $50,000 for all of its services, regardless of whether the contingency occurs and regardless of the number of hours of work performed. See Molten Metal, 262 B.R. at 176-77.

Viewed in this context, the remaining factual issue is simply stated: Did Libra perform ½ or more of its total services after receiving the $25,000 Payment? If so, it will be deemed, as a matter of law, to have provided new value equal to or greater than the $25,000 Payment and its defense will prevail.[1] In sum, a genuine issue of material fact remains regarding what portion of the $50,000 value of all the services rendered under the contract is attributable to the Post-Payment Services, and the existence of this issue precludes entry of summary judgment.[2]

---

[1] Although the Court has rejected use of hours and hourly rate to determine the value of the Post-Payment Services, it would seem appropriate to use this methodology in determining the proportional value of the services rendered before and after receipt of the $25,000 Payment.

[2] In its Supplemental Memorandum and in the Sena Declaration, Libra argues and asserts that its Post-Payment Services helped procure one of the companies that purchased assets from the Debtors in this bankruptcy case. The Court is giving no weight to these assertions. The extent to which Libra's Post-Payment Services helped procure one of the postpetition buyers would be relevant only to the contingency fee portion of the contract, and Libra has asserted no claim in this case for a contingency fee. See Molten Metal, 262 B.R. at 176-77.

**Conclusion**

The Defendant continued to perform financial services to the Debtor after receiving the alleged preference payment consisting of ½ ($25,000) of its engagement fee.  If Libra can establish that more than ½ of its total services were performed after receiving the payment, its new value defense will prevail and should prevail.  See 5 Collier on Bankruptcy ¶547.04[4][a], 547-68.3 (15th Ed. Rev. 2003) (the exception in §547(c)(4) is intended to encourage creditors to work with troubled companies).

**Further Proceedings**

Given the limited factual issue which remains and the amount at stake in this proceeding, the Court finds it appropriate and efficient to reserve ruling on Libra's Motion for Summary Judgment and allow Libra one final opportunity to supplement the record by declaration before causing the parties to incur the expense of a trial.

Based upon the foregoing, it is -

**ORDERED** as follows:

1. Plaintiff's Cross Motion to Strike Affirmative Defenses is denied.

2. The Court reserves ruling on Defendant's Motion for Summary Judgment.

3. No later than February 25, 2007, Defendant shall file a Second Supplemental Memorandum and a further Declaration that addresses the factual issue identified in this Order, namely, the proportional amount of total services rendered after the $25,000 payment.

4. No later than March 16, 2007, Plaintiff shall file a Response and serve any discovery he wishes to conduct in connection with the remaining factual issue.  If the Plaintiff believes the Supplemental Memorandum and Declaration establish that ½ or more of the total services were Post-Payment Services, Plaintiff should agree to an Order granting the Motion for Summary Judgment and dismissing this proceeding.

5.	The Court will conduct a final hearing on the Motion for Summary Judgment on <u>April 2, 2007</u>, at <u>10:30 a.m.</u>, at the U.S. Bankruptcy Court, 51 S.W. First Avenue, Courtroom 1406, Miami, Florida 33l30.  If the Motion is denied, the proceeding will be set for trial.

###

COPIES TO:

Heather L. Yonke, Esq.
GENOVESE, JOBLOVE & BATTISTA, P.A.
100 Southeast 2nd Street, Suite 4400
Miami, Florida 33l3l
(Counsel for Plaintiff)

Ali M. M. Mojdehi, Esq.
BAKER & McKENZIE, LLP
101 West Broadway, 12th Floor
San Diego, California 92101
(Counsel for Defendant)